# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *ALTEC INDUSTRIES, INC.,*<br>*ALTEC, INC.,* and<br>*J.J. KANE ASSOCIATES, INC. d/b/a*<br>*J.J. KANE AUCTIONEERS,*<br><br>   Plaintiffs,<br><br>v.<br><br>*BIG D ELECTRIC, INC., n/k/a K D*<br>*BREWER ENTERPRISES, INC.,*<br>**Serve:**<br>**c/o Daniel Brewer**<br>**1511 Chart Hills Dr.**<br>**Marion, IL 62959-5229**<br><br>and<br><br>*BIG D RIGHT OF WAY SERVICES, INC., n/k/a*<br>*D L BREWER ENTERPRISES, INC.*,<br>**Serve:**<br>**c/o Daniel Brewer**<br>**1511 Chart Hills Dr.**<br>**Marion, IL 62959-5229**<br><br>and<br><br>*DANIEL BREWER,*<br>**Serve:**<br>**1511 Chart Hills Dr.**<br>**Marion, IL 62959-5229**<br><br>and<br><br>*KENT BREWER,*<br>**Serve:**<br>**1015 Cottonwood Rd.**<br>**Equality, IL 62934-2003**<br><br>and<br><br>*DANA BREWER*,<br>**Serve:**<br>**2505 Rae Allen Ln.**<br>**Marion, IL 62959-8487**<br><br>and | Cause No. 3:19-cv-01227-NJR-MAB |

12478697.1

|  |  |
|---|---|
| *VICKI COOK*, | ) |
| **Serve:** | ) |
| **1907 State Route 153** | ) |
| **Coulterville, IL 62237-2733** | ) |
|  | ) |
| Defendants. | ) |

# FIRST AMENDED COMPLAINT

COME NOW Plaintiffs Altec Industries, Inc. ("Altec Industries"); Altec, Inc.; and J.J. Kane Associates, Inc. d/b/a J.J. Kane Auctioneers ("J.J. Kane") (collectively, "Plaintiffs"), through counsel, and state as their <u>First Amended</u> Complaint:

## Introductory Statement

1. Plaintiffs are party defendants to a personal-injury lawsuit currently pending in the U.S. District Court for the Southern District of Illinois, styled *Duclos v. Altec, Inc. et al.*, Case No. 3:16-cv-01162 (the "*DuClos* Case").

2. The *DuClos* Case involves an electrical injury that Eric DuClos sustained during the course of his employment with Defendant Big D Electric, Inc. ("Big D Electric") in a truck owned by Big D Right of Way Services, Inc. ("Big D ROW") (collectively, the "Big D Entities").

3. Plaintiffs brought contribution claims against the Big D Entities in the *DuClos* case. During the pendency of that litigation, the Big D Entities entered into an Asset Purchase Agreement disposing of effectively all of the companies' assets (save for a joint $1 million insurance policy).

4. Plaintiffs bring this lawsuit alleging fraudulent transfers, as the Big D Entities have and continue to transfer the proceeds of that asset sale to the detriment of Plaintiffs, which hold large contingent claims against the Big D Entities.

2

**Parties, Jurisdiction, and Venue**

5. Plaintiff Altec, Inc. is an Alabama corporation with a principal place of business in Alabama; therefore, it is an Alabama citizen for diversity purposes. 28 U.S.C. § 1332(c)(1).

6. Plaintiff Altec Industries, Inc. is an Alabama corporation with a principal place of business in Alabama; therefore, it is an Alabama citizen for diversity purposes. 28 U.S.C. § 1332(c)(1).

7. Plaintiff J.J. Kane Associates, Inc. d/b/a J.J. Kane Auctioneers is a New Jersey corporation with a principal place of business in New Jersey; therefore, it is a New Jersey citizen for diversity purposes. 28 U.S.C. § 1332(c)(1).

8. Defendant Big D Right of Way Services, Inc. changed its corporate name to "D L Brewer Enterprises Inc." on or about January 15, 2016, and it is an involuntarily dissolved corporation incorporated in Illinois, with a principal place of business in Illinois. Therefore, Big D ROW is an Illinois citizen for diversity purposes. 28 U.S.C. § 1332(c)(1).

9. Defendant Big D Electric, Inc. changed its corporate name on or about February 17, 2016 to "K D Brewer Enterprises, Inc." It is a Delaware corporation with a principal place of business in Illinois and is thus a citizen of both Illinois and Delaware.

10. Defendant Daniel Brewer is a shareholder of both the Big D Entities and is a citizen of Illinois.

11. Defendant Kent Brewer is a shareholder of both the Big D Entities and is a citizen of Illinois.

12. Defendant Dana Brewer is a shareholder of both the Big D Entities and is a citizen of Illinois.

13. Defendant Vicki Cook is a shareholder of both the Big D Entities and is a citizen of Illinois.

14. Because the Plaintiffs are comprised of citizens of Alabama and New Jersey and the Defendants are comprised of citizens of Delaware and Illinois, complete diversity of citizenship exists between the parties.

15. As further explained below, the amount in controversy greatly exceeds $75,000<u>, exclusive of interest and costs</u>. Specifically, Plaintiffs seek avoidance of significant <u>past</u> transfers <u>(transfers individually and collectively exceeding the jurisdictional minimum of $75,000, exclusive of interest and costs),</u> and an injunction against future quarterly payments <u>(each of which also exceeds $75,000, exclusive of interest and costs)</u>.

16. Because the Plaintiffs and Defendants are completely diverse, and because the amount in controversy exceeds $75,000, <u>exclusive of interest and costs,</u> this Court has diversity jurisdiction under 28 U.S.C. § 1332.

17. The Southern District of Illinois is the proper venue because at least one of the Defendants resides in this District, and all Defendants reside in Illinois. 28 U.S.C § 1391(b)(1).

18. Alternatively, a substantial part of the events giving rise to this fraudulent-transfer claim occurred in this District, in that the business that was sold operated in this District, the funds were transferred in this District, and a substantial part of the property at issue in this lawsuit (the fraudulently transferred funds) are located in Illinois, in the custody of the Defendants. Thus, venue in this District is proper for this alternative reason. 28 U.S.C § 1391(b)(2).

**Facts Common to All Counts**

19. The Shareholders of both Big D Entities are Daniel Brewer, Kent Brewer, Dana Brewer, and Vicki Cook (collectively the "Shareholders"), all of whom are siblings.

20. Each Shareholder holds a 25% interest in each of the Big D Entities.

21. Defendant Daniel Brewer has been the President of each company at all relevant times.

22. In November 2015 (slightly more than two years after the first iteration of the *DuClos* Case was filed in state court as cause number 13-L-157), the Big D Entities entered into an Asset Purchase Agreement for the sale of substantially all of the Big D Entities' assets (the "Asset Purchase Agreement") to BHMG ELECTRIC, LLC and BHMG ROW, LLC (collectively "Buyers").

23. Big D Electric was a third-party defendant in the *DuClos* Case (the first iteration of it, in state court) when the transaction took place.

24. The purchase price of the assets is more fully contained in the Asset Purchase Agreement which will be filed under seal with leave of Court and shared with all counsel according to Protective Order. <u>The purchase price exceeds $75,000, exclusive of interest and costs.</u>

25. The Buyers paid certain amounts at closing, <u>which exceeded $75,000 (exclusive of interest and costs), and</u> which occurred on or about December 31, 2015, or January 1, 2016.

26. The remainder of the purchase price was financed by the Big D Entities pursuant to the terms of a promissory note between the Big D Entities and the Buyers.

27. Under the promissory note, the Buyers are continuing to pay the Big D Entities through quarterly promissory-note payments. <u>Each of these quarterly promissory-note payments exceeds $75,000, exclusive of interest and costs.</u>

28. Daniel Brewer is also currently an employee of the Buyers, and is making an annual salary too.

29. After the Asset Purchase Agreement, effectively the only remaining assets of the Big D Entities are a $1 million general-liability insurance policy and the proceeds of the asset sale.

30. Upon information and belief, the initial proceeds of the sale (the earnest money and the deposit) were transferred directly to the Shareholders, or indirectly as distributions from the Big D Entities, without any reasonably equivalent value to the Big D Entities in return (the "Transfers").

31. Upon information and belief, the past and still ongoing quarterly payments have been and are being transferred to the Shareholders (also part of the "Transfers"), directly or indirectly, as distributions from the Big D Entities, without any reasonably equivalent value to the Big D Entities in return.

32. Further, upon information and belief, the Big D Entities have no remaining assets, except for the $1 million insurance policy described above.

33. Upon information and belief, no portion of the sale proceeds is being set aside by the Big D Entities to cover potential liabilities.

34. Upon information and belief, the Big D Entities are not adequately capitalized to cover their contingent liabilities to the Plaintiffs in the *DuClos* Case.

35. In particular, Plaintiffs have been and are asserting third-party claims against the Big D Entities in the *DuClos* Case.

36. The *DuClos* Case involves various product-liability claims, in which Eric DuClos asserts strict-products-liability claims against Altec, Inc., Altec Industries, and J.J. Kane.

37. Altec Industries manufactured the aerial device that DuClos was standing in when he sustained his electrical injury; J.J. Kane was the auctioneer for the aerial device purchased by Big D ROW from the seller Western Resources, now Western Energy.

38. At issue in the contribution claims in the *DuClos* Case will be the relative culpability of Altec, Inc., Altec Industries (manufacturer), J.J. Kane (auctioneer), Big D ROW (aerial device owner), and Big D Electric (employer). J.J. Kane also has a contractual-indemnity claim against Big D ROW in the *DuClos* Case.

39. DuClos sustained extensive injuries with medical bills and workers' compensation benefits payments approaching $2 million.

40. DuClos' latest demand (in December 2018), including pain and suffering, was considerable and included a waiver of the Big D Electric workers' compensation lien.

41. Thus, even though the Big D Entities have only contingent liability in the case, the $1 million general-liability insurance policy is woefully insufficient to pay a judgment against the Big D Entities of even a modest percentage of fault, assuming DuClos prevails on the merits.

42. If the jury in the *DuClos* Case determines DuClos' injury rests with the Big D Entities, then the Big D Entities will be liable for a substantial part of any damages awarded by the jury.

43. Diversion of the proceeds from the Asset Purchase Agreement to the Shareholders without reasonably equivalent value defrauds these Plaintiffs (third-party plaintiffs in the *DuClos* Case), who have claims against the Big D Entities.

**Count I — Fraud in Fact**
**Illinois Uniform Fraudulent Transfers Act ("UFTA")**

44. Plaintiffs incorporate by reference all previous paragraphs, Paragraphs 1-43, inclusive, as if fully set forth herein.

45. 740 ILCS 160/5(a) states that a creditor may establish a cause of action under the UFTA for a "transfer made or obligation incurred by a debtor [that] is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: … with actual intent to hinder, delay, or defraud any creditor of the debtor."

46. Plaintiffs are creditors and Defendants are debtors as defined in the statute.

47. Under 740 ILCS 160/5(a)(1), an "actual intent to hinder, delay, or defraud" may be inferred from the circumstances surrounding the transaction.

48. In determining whether a transfer is made with actual intent to defraud, 740 ILCS 160/5(b) sets forth several factors — sometimes referred to as "badges of fraud" — from which an inference of fraudulent intent may be drawn:

    a. the transfer or obligation was to an insider;

    b. the debtor retained possession or control of the property transferred after the transfer;

    c. the transfer or obligation was disclosed or concealed;

    d. before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

    e. the transfer was of substantially all the debtor's assets;

    f. the debtor absconded;

    g. the debtor removed or concealed assets;

      h.  the value of the consideration received by the debtor was not reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

      i.  the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

      j.  the transfer occurred shortly before or shortly after a substantial debt was incurred; and

      k.  the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. 740 ILCS 160/5(b).

49.    Here, the actions of the Big D Entities and the Shareholders evidence, at a minimum based on the facts as Plaintiffs know them today and without future discovery, numerous badges of fraud sufficient to infer fraudulent intent.

50.    The Transfers appear to have been made to insiders of the Big D Entities. "Insider" is defined in the UFTA to include directors, officers, and persons in control of the company, as well as their relatives. 740 ILCS 160/2(g). Because the Big D Entities are family owned and operated businesses, and the Transfers are being made to the four Shareholders who are siblings, the Shareholders are "insiders."

51.    The Big D Entities concealed the Transfers.

52.    The Shareholders wholly and privately owned the Big D Entities, and — upon information and belief — the Transfers to the Shareholders were not disclosed to these Plaintiffs (the creditors) until Daniel Brewer's deposition in the *DuClos* Case on March 14, 2019.

53.    Before the Transfers were made, the Big D Entities had been sued or were threatened with suit, and the Shareholders (who owned the businesses in a closely held, family-

owned fashion) have known or reasonably should have known of these contingent liabilities at all relevant times.

54. Upon information and belief, the Transfers were and are of all the Big D Entities' liquid assets (again, save for the insurance policy), as Daniel Brewer's testimony on March 14, 2019, suggested that no proceeds of the sale are being held by the Big D Entities and are simply being wholly distributed to the Shareholders.

55. The Big D Entities arguably removed or concealed assets by distributing the remaining liquid assets out of the corporations to the Shareholders.

56. There is no "reasonably equivalent value" when the consideration for a transfer is either inadequate or nonexistent. Upon information and belief, the Transfers here are unilateral transfers with no consideration given in return.

*57.* Upon information and belief, the Big D Entities were, and are, insolvent during the period of time the Transfers have been made to the Shareholders, including the present. Under the UFTA, a debtor is insolvent when the sum of the debtor's debts is greater than all of the debtor's assets. 740 ILCS 160/3(a).

58. The pending lawsuit is a large contingent liability of the Big D Entities that outweighs the value of the assets owned by the Big D Entities; therefore, the Big D Entities are insolvent under the UFTA.

59. Given the presence of multiple badges of fraud here, the Transfers were made with actual intent to hinder, delay, or defraud.

60. Therefore, the past and continuing Transfers to Shareholders are fraudulent in fact under the UFTA.

61. As a remedy, Plaintiffs seek avoidance of the Transfers already made by the Big D Entities to the Shareholders under 160/8(a)(1) and an injunction under 160/8(a)(3)(a) to prevent both the Big D Entities from making future Transfers of the proceeds of the asset sale, and to prevent the Shareholders from making any dispositions of the Transfers they have already received.

WHEREFORE Plaintiffs Altec Industries, Inc.; Altec, Inc.; and J.J. Kane Associates, Inc. d/b/a J.J. Kane Auctioneers request an Order of the Court finding in their favor and against the Defendants, holding that all Transfers of proceeds from the Asset Purchase Agreement to Shareholders are fraudulent in fact, avoiding the Transfers already made to Shareholders (including a monetary judgment against the Defendants), enjoining future Transfers to Shareholders, prohibiting the Shareholders from disposing of the proceeds of the past or future Transfers in any way, and granting further relief deemed just and proper by the Court under the Illinois Uniform Fraudulent Transfer Act or otherwise.

**Count II — Fraud in Law
Illinois Uniform Fraudulent Transfers Act**

62. Plaintiffs incorporate by reference all previous paragraphs, Paragraphs 1–61, inclusive, as if fully set forth herein.

63. Section 740 ILCS 160/5(a) states that a "transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: … without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

      a. was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

      b. intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due."

64. Plaintiffs are creditors and Defendants are debtors as defined in the statute.

65. The Transfers were fraudulent under 740 ILCS 160/5(2), also referred to as "fraud in law."

66. Put another way, for a transfer to constitute fraud in law: (1) the transfer must have been made for *no consideration or for inadequate consideration*; (2) there must be an existing debt, or debt which the transferor *believed or reasonably should have believed* that the transferor would incur, and; (3) the transferor must not retain sufficient assets to pay the indebtedness.

67. Here, upon information and belief, the Transfers to the Shareholders were and are being made for no consideration or completely inadequate consideration.

68. There was a debt[1] that the Big D Entities reasonably should have believed they would incur because the Plaintiffs had (at the time of the Asset Purchase Agreement and at all times thereafter) a claim against the Big D Entities and, as the quarterly Transfers have been distributed to Shareholders, a claim against the Big D Entities for contribution and/or indemnity in the *DuClos* Case.

69. The debt was beyond the Big D Entities' ability to pay because their insurance coverage is insufficient to cover the Big D Entities potential liabilities to Plaintiffs, despite the

---

[1] "Debt" is defined in the UFTA to include "liability on a claim." 740 ILCS 160/2.

12478697.1

contingent nature of those liabilities, because of the large value of the potential judgment against them in the *DuClos* Case and the relative lack of any assets in the Big D Entities.

70. Therefore, the Transfers to Shareholders from the Asset Purchase Agreement were and are fraudulent in law.

71. As a remedy, Plaintiffs seek avoidance of the Transfers already made by the Big D Entities to the Shareholders under 160/8(a)(1) and an injunction under 8(a)(3)(a) to prevent both the Big D Entities from making future Transfers of the proceeds of the asset sale, and to prevent the Shareholders from making any dispositions of the Transfers they have already received.

WHEREFORE Plaintiffs Altec Industries, Inc.; Altec, Inc.; and J.J. Kane Associates, Inc. d/b/a J.J. Kane Auctioneers request an Order of the Court finding in their favor and against the Defendants, holding that all Transfers of proceeds from the Asset Purchase Agreement to Shareholders are fraudulent in law, avoiding the Transfers already made to Shareholders (including a monetary judgment against the Defendants), enjoining future Transfers to Shareholders, prohibiting the Shareholders from disposing of the proceeds of the past or future Transfers in any way, and granting further relief deemed just and proper by the Court under the Illinois Uniform Fraudulent Transfer Act or otherwise.

SANDBERG PHOENIX & von GONTARD P.C.

By:     */s/ Timothy C. Sansone*
Mary Anne Mellow, #6184050
Timothy C. Sansone, #6257469
Zachary S. Merkle, #6322707
600 Washington Avenue - 15th Floor
St. Louis, MO 63101-1313
314-231-3332
314-241-7604 (Fax)
mmellow@sandbergphoenix.com
tsansone@sandbergphoenix.com
zmerkle@sandbergphoenix.com

and

HOOD LAW FIRM LLC
Robert H. Hood (*forthcoming pro hac vice*)
Robert H. Hood, Jr.(*forthcoming pro hac vice*)
James Hood (*forthcoming pro hac vice*)
172 Meeting Street
Charleston, SC 29401
843-577-1201 – Robert Hood
843-577-1219 – Robert Hood, Jr.
bobby.hood@hoodlaw.com
bobbyjr.hood@hoodlaw.com
james.hood@hoodlaw.com

*Attorneys for Plaintiffs Altec Industries, Inc. Altec, Inc., and J.J. Kane Associates, Inc. d/b/a J.J. Kane Auctioneers*

14